FILED

2015 NOV 18  PM 1: 52

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2015 Grand Jury

**C R 1 5 - 0 6 2 9**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>SERGIO AMADOR and<br>DAVID GOMEZ,<br><br>              Defendants. | CR No. 15-<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1341: Mail Fraud;<br>18 U.S.C. § 2(b): Causing An Act<br>To Be Done] |

The Grand Jury charges:

COUNTS ONE THROUGH TWENTY

[18 U.S.C. §§ 1341, 2(b)]

A.   INTRODUCTORY ALLEGATIONS

    1.   At all times relevant to this Indictment:

        a.   The International Longshore and Warehouse Union,
formerly known as the International Longshoremen's and Warehousemen's
Union ("ILWU"), together with various ILWU locals in different port
locations, represented dock workers at ports on the West Coast of the
United States, including at the ports of Los Angeles and Long Beach
within the Central District of California.

b.    The Pacific Maritime Association ("PMA") represented member organizations involved in the shipping industry and arranged on their behalf for the hiring of dock workers at ports on the West Coast of the United States, including at the ports of Los Angeles and Long Beach within the Central District of California.

c.    The International Longshoremen's and Warehousemen's Union – Pacific Maritime Association Welfare Plan (the "ILWU-PMA Welfare Plan") was a benefit plan, established by agreement between the ILWU and PMA and affecting commerce, that provided a variety of benefits, including health care benefits, to eligible active and retired ILWU members and their qualified dependents and survivors. Eligible recipients of health care benefits under the ILWU-PMA Welfare Plan had an annual choice to have those benefits provided through either a Health Maintenance Organization ("HMO") or a self-funded program that, effective July 1, 2000, was the ILWU-PMA Welfare Plan Self Funded Programs Coastwise Indemnity Plan (the "Plan").  The Plan was funded almost entirely by the PMA.

d.    The Plan reimbursed providers of medical services, including physicians, chiropractors, and medical clinics (collectively "providers"), that treated patients covered by the Plan ("Plan members").  Each Plan member was issued a subscriber identification card that identified the Plan member by a unique identification number ("Plan member ID Number").

e.    The Plan required providers to submit claim forms in order to receive reimbursement for medical services provided to subscribers.  Among other information, providers were required to include in the claim forms: (i) the Plan member's name and ID Number; (ii) the type of service provided (identified by a standardized

2

procedure code number known as a "CPT Code"); (iii) the date the
service was provided; (iv) the charge for the service; (v) the
diagnosis (identified by a standardized diagnostic code number, the
"ICD-9 Diagnosis Code"); and (vi) the provider's name and/or
identification number.

     f.    Effective July 1, 2000, the Plan was administered by
the ILWU-PMA Benefit Plans office, with claims processed and paid
through the ILWU-PMA Coastwise Claims Office ("Coastwise Claims").
Subsequently, the Plan shifted to using a third party administrator
("TPA"), which, from 2008 until 2013, was CIGNA, but claims for
medical services provided to Plan members continued to be processed
and paid through Coastwise Claims.  Coastwise Claims used the United
States mail to send to providers reimbursement checks resulting from
processed claims.

     g.    The Plan had a Preferred Provider Organization
("PPO").  For medical services provided by providers within the PPO,
the Plan generally covered 100% of the PPO charge with no deductible
and without requiring Plan members receiving the services to
contribute any copay amount or incur any other out-of-pocket costs.

     h.    The Plan provided coverage for chiropractic services
and had a PPO for chiropractic services, which, effective as of July
1, 2009, was the Chiropractic Health Plan of California ("CHPC").
For chiropractic services provided by a CHPC provider, the Plan
covered 100% of CHPC charges, with no out-of-pocket cost to the Plan
member receiving the chiropractic services.  The chiropractic
services covered by the Plan included office visits, up to a maximum
of 40 related to any particular "diagnosis," and up to a maximum of
18 related to "symptoms" in the absence of a "diagnosis."

3

     i.   The CHPC had a Code of Conduct that was developed to address specific areas of concern relating to the Plan's chiropractic benefit.  Among other things, the Code of Conduct: (i) prohibited the offering of any incentive, including rebates, free or discounted treatments, or gifts of any type, to Plan members for recruiting them as patients; (ii) prohibited solicitation, recruitment, or any other promotional or educational contact with Plan members by a CHPC provider, the provider's staff, or any of the provider's employees or agents at or around union halls, union offices, dispatch halls/centers, or any other union facility or place of business; (iii) required treatments provided to a Plan member to be medically necessary and only to address the specific condition as diagnosed and documented in the Plan member's patient's history; and (iv) required adjunctive therapies and procedures to be used only to support and facilitate chiropractic care.

2.   At all times relevant to this Indictment, defendants SERGIO AMADOR and DAVID GOMEZ were residents of Los Angeles County, California, within the Central District of California.  Defendants AMADOR and GOMEZ were members of ILWU Local 13, which was based in Los Angeles County, within the Central District of California.

3.   On or about April 17, 2009, defendants AMADOR and GOMEZ, and C.R., created and caused to be created, through filings with the California Secretary of State, a corporation called "Port Medical Associates, Inc."  In or about early 2009, defendants AMADOR and GOMEZ, and C.R., opened a clinic, operating under the name "Port Medical," at 2530 Atlantic Boulevard, Suite A, Long Beach, California, within the Central District of California.

1      4.   On or about April 9, 2010, defendants AMADOR and GOMEZ, and

2   C.R., created and caused to be created, through filings with the

3   California Secretary of State, a corporation called "Port Medical San

4   Pedro Inc."  In or about early 2010, defendants AMADOR and GOMEZ, and

5   C.R., opened a second clinic, also operating under the name "Port

6   Medical," at 407 North Harbor Boulevard, San Pedro, California,

7   within the Central District of California.

8      5.   Both Port Medical clinics purported to offer general

9   medical and chiropractic care through medical providers hired and

10  caused to be hired by defendants AMADOR and GOMEZ, and C.R.,

11  including, in particular, K.M., who was a licensed chiropractor and

12  member of the CHPC.

13     6.   In or about December 2008, defendants AMADOR and GOMEZ, and

14  C.R., created and caused to be created, through filings with the

15  California Secretary of State, a medical management company called

16  "DCS Medical Management LLC" ("DCS").  In or about March and

17  September 2010, respectively, defendants AMADOR and GOMEZ, and C.R.,

18  created and caused to be created, through filings with the California

19  Secretary of State, two additional medical management companies:

20  Chosen Medical Management LLC ("Chosen") and Ramport Medical

21  Management LLC ("Ramport").  On or about the following dates,

22  defendants AMADOR and GOMEZ, and C.R., opened and caused to be opened

23  at J.P. Morgan Chase Bank the following accounts (each identified by

24  the last four digits of the account number) for these medical

25  management companies:

26  ///

27  ///

28

| Date | Company | Account |
|------|---------|---------|
| March 6, 2009 | DCS | ***3393<br>("DCS 3393 Account") |
| March 29, 2010 | Chosen | ***6061<br>("Chosen 6061 Account") |
| August 16, 2010 | Ramport | ***9842<br>("Ramport 9842 Account") |
| January 12, 2011 | Ramport | ***6169<br>("Ramport 6169 Account") |

B.   THE FRAUDULENT SCHEME

7.   Beginning on or about April 17, 2009, and continuing through in or about September 2012, in Los Angeles County, within the Central District of California, defendants AMADOR and GOMEZ, together with others known and unknown to the Grand Jury, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the Plan as to material matters, and to obtain money and property from the Plan by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

8.   The fraudulent scheme was carried out, in substance, as follows:

a.   Defendants AMADOR and GOMEZ incorporated and caused to be incorporated Port Medical, and obtained and caused to be obtained for Port Medical a provider identification number for use in making claims for reimbursement to the Plan.

b.   Defendants AMADOR and GOMEZ incorporated and caused to be incorporated DCS, Chosen, and Ramport, and opened and caused to be opened bank accounts for DCS, Chosen, and Ramport for use in receiving funds from Port Medical, which funds defendants AMADOR and GOMEZ then used and caused to be used to, among other things: (i) pay

6

themselves; and (ii) pay incentives to and on behalf of Plan members in return for those Plan members receiving medical and chiropractic services at Port Medical and encouraging other Plan members to also receive medical and chiropractic services at Port Medical.

c.   Defendants AMADOR and GOMEZ recruited, and caused others to recruit, Plan members to receive medical and chiropractic services at Port Medical, including by offering and causing to be offered to those Plan members incentives, including sponsorships of sports teams, cash payments, free massages and facials, and other gifts and services, in return for those Plan members receiving medical and chiropractic services at Port Medical and encouraging other Plan members to also receive medical and chiropractic services at Port Medical.

d.   Defendants AMADOR and GOMEZ caused Plan members receiving chiropractic services at Port Medical to sign multiple sign-in stickers.  Defendants AMADOR and GOMEZ also caused others to print and sign Plan members' names on sign-in stickers.  Defendants AMADOR and GOMEZ then used, and caused others to use, these sign-in stickers to create chart entries falsely representing that chiropractic services had been provided to Plan members on dates when no such services had actually been provided.

e.   Defendants AMADOR and GOMEZ encouraged, and caused others to encourage, Plan members to go to Port Medical to receive massages, heat and ice treatments, and other physical therapy treatments that were not medically necessary, did not address any specific condition of the patient that had been the subject of a proper diagnosis, and were not used to support and facilitate chiropractic care.  Defendants AMADOR and GOMEZ then created, and

1 caused others to create, chart entries that were materially false and
2 misleading in that they represented that the services provided were
3 medically necessary, addressed specific conditions of patients that
4 had been properly diagnosed, and were used to support and facilitate
5 chiropractic care.

6       f.   Knowing that the chiropractic services being billed
7 had not actually been provided, were not medically necessary, did not
8 address specific conditions of patients that had been properly
9 diagnosed, and were not used to facilitate chiropractic care,
10 defendants AMADOR and GOMEZ caused to be submitted to the Plan claims
11 for reimbursement for these chiropractic services that were
12 materially false and misleading in that they represented that the
13 services had been provided, were medically necessary, addressed
14 specific conditions of patients that had been properly diagnosed, and
15 were used to support and facilitate chiropractic care, and concealed
16 material facts, in that they concealed that the Plan members for whom
17 claims were being submitted had been recruited to receive
18 chiropractic services at Port Medical through the use of monetary and
19 other incentives.

20       g.   Defendants AMADOR and GOMEZ caused, and directed
21 others to cause, Port Medical to transfer funds derived from checks
22 received in the mail from the Plan to the DCS 3393 Account, Chosen
23 6061 Account, Ramport 9842 Account, and Ramport 6169 Account. From
24 these accounts, defendants AMADOR and GOMEZ wrote, and caused others
25 to write, checks transferring funds to themselves, and making
26 payments to and on behalf of Plan members to provide them with
27 incentives to receive, and encourage others to receive, medical and
28 chiropractic services at Port Medical.

9.   By means of the fraudulent scheme described above, defendants AMADOR and GOMEZ caused the Plan to pay to Port Medical at least $225,000.

C.   THE USE OF THE MAIL

10.   On or about the dates set forth below, defendants AMADOR and GOMEZ, together with others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the above described scheme to defraud, caused to be placed in a post office and authorized depository for mail matter the following checks drawn on a Coastwise Claims account to be sent and delivered by the United States Postal Service to Port Medical, in Los Angeles County, within the Central District of California:

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| ONE | December 29, 2010 | Check No. 7218695 payable to Port Medical in the amount of $216.18 in payment of a claim for chiropractic services purportedly provided to C.V. (E.R.'s daughter) on or about November 16, 2010 |
| TWO | December 29, 2010 | Check No. 7218701 payable to Port Medical in the amount of $246.23 in payment of a claim for chiropractic services purportedly provided to E.R. on or about November 16, 2010 |
| THREE | December 29, 2010 | Check No. 7218686 payable to Port Medical in the amount of $432.36 in payment of a claim for chiropractic services purportedly provided to C.V. (E.R.'s daughter) on or about November 27 & 30, 2010 |
| FOUR | December 29, 2010 | Check No. 7218704 payable to Port Medical in the amount of $216.18 in payment of a claim for chiropractic services purportedly provided to E.R. on or about November 30, 2010 |

| FIVE | February 1, 2011 | Check No. 7281537 payable to Port Medical in the amount of $429.88 in payment of a claim for chiropractic services purportedly provided to H.V. (J.V.'s daughter) on or about November 2 & 9, 2010 |
|------|------------------|---|
| SIX | February 1, 2011 | Check No. 7281549 payable to Port Medical in the amount of $736.11 in payment of a claim for chiropractic services purportedly provided to J.V. on or about November 2, 9, & 16, 2010 |
| SEVEN | February 1, 2011 | Check No. 7281554 payable to Port Medical in the amount of $95.25 in payment of a claim for chiropractic services purportedly provided to J.V-M. (J.V.'s son) on or about November 2, 2010 |
| EIGHT | February 1, 2011 | Check No. 7281560 payable to Port Medical in the amount of $95.25 in payment of a claim for chiropractic services purportedly provided to L.V. (J.V.'s daughter) on or about November 2, 2010 |
| NINE | February 1, 2011 | Check No. 7281562 payable to Port Medical in the amount of $95.25 in payment of a claim for chiropractic services purportedly provided to F.V. (J.V.'s daughter) on or about November 2, 2010 |
| TEN | February 1, 2011 | Check No. 7281538 payable to Port Medical in the amount of $285.75 in payment of a claim for chiropractic services purportedly provided to D.V. (J.V.'s daughter) on or about November 9, 16, & 23, 2010 |
| ELEVEN | February 1, 2011 | Check No. 7281548 payable to Port Medical in the amount of $644.82 in payment of a claim for chiropractic services purportedly provided to H.V. (J.V.'s daughter) on or about November 16, 23, & 30, 2010 |

| TWELVE | February 1, 2011 | Check No. 7281550 payable to Port Medical in the amount of $490.74 in payment of a claim for chiropractic services purportedly provided to J.V. on or about November 23 & 30, 2010 |
|---|---|---|
| THIRTEEN | February 2, 2011 | Check No. 7284904 payable to Port Medical in the amount of $95.25 in payment of a claim for chiropractic services purportedly provided to D.V. (J.V.'s daughter) on or about November 30, 2010 |
| FOURTEEN | April 27, 2011 | Check No. 7461388 payable to Port Medical in the amount of $312.00 in payment of a claim for chiropractic services purportedly provided to D.B. on or about January 26, 2011 |
| FIFTEEN | April 27, 2011 | Check No. 7461389 payable to Port Medical in the amount of $312.00 in payment of a claim for chiropractic services purportedly provided to D.B. on or about February 2, 2011 |
| SIXTEEN | April 27, 2011 | Check No. 7461391 payable to Port Medical in the amount of $312.00 in payment of a claim for chiropractic services purportedly provided to D.B. on or about February 16, 2011 |
| SEVENTEEN | April 29, 2011 | Check No. 7464661 payable to Port Medical in the amount of $95.25 in payment of a claim for chiropractic services purportedly provided to D.V. (J.V's daughter) on or about November 2, 2010 |
| EIGHTEEN | May 26, 2011 | Check No. 7521095 payable to Port Medical in the amount of $214.94 in payment of a claim for chiropractic services purportedly provided to J.C. on or about January 22, 2011 |
| NINETEEN | August 16, 2011 | Check No. 7660619 payable to Port Medical in the amount of $357.96 in payment of a claim for chiropractic services purportedly provided to L.L. on or about July 6, 2011 |

| TWENTY | August 16, 2011 | Check No. 7660620 payable to Port Medical in the amount of $245.37 in payment of a claim for chiropractic services purportedly provided to L.L. on or about July 11, 2011 |
|---|---|---|

A TRUE BILL

/s/
_____
Foreperson

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

GEORGE S. CARDONA
Assistant United States Attorney
Chief, Major Frauds Section