EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
GEORGE S. CARDONA (Cal. Bar No. 135439)
Assistant United States Attorneys
Chief, Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8323
     Facsimile: (213) 894-6269
     E-mail: george.s.cardona@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>                    v.<br><br>DAVID GOMEZ,<br><br>          Defendant. | No. CR 15-629-JAK<br><br>GOVERNMENT'S TRIAL MEMORANDUM<br><br>Date:   October 11, 2016<br>Time:   9:00 a.m.<br>Place:  Courtroom of the<br>        Hon. John A. Kronstadt |

     Plaintiff United States of America, by and through its counsel

of record, Assistant United States Attorney George S. Cardona,

hereby files its Trial Memorandum.

///

///

1    The government respectfully requests leave to file additional

2  memoranda as may become appropriate during the course of trial.

3

4  Dated: September 8, 2016                Respectfully submitted,

5                                          EILEEN M. DECKER
                                           United States Attorney
6
                                           LAWRENCE S. MIDDLETON
7                                          Assistant United States Attorney
                                           Chief, Criminal Division
8

9                                          _____/s/_____
                                           GEORGE S. CARDONA
10                                         Assistant United States Attorney

11                                         Attorneys for Plaintiff
                                           UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

DESCRIPTION                                                                      PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.   CASE SCHEDULING MATTERS........................................1

II.  TRIAL EVIDENCE................................................1

     A.   Witnesses................................................1

     B.   Types of Evidence........................................5

III. MOTIONS IN LIMINE............................................7

IV.  ELEMENTS OF THE CHARGED CRIME................................7

V.   STATEMENT OF FACTS...........................................8

VI.  EVIDENTIARY ISSUES..........................................11

     A.   Stipulations...........................................11

     B.   Proof of the Charged Scheme............................12

     C.   Co-Schemer Statements..................................13

     D.   Patient Files..........................................14

     E.   Duplicates.............................................14

     F.   Authentication and Identification......................15

     G.   Certified Public Records...............................15

     H.   Summary Charts.........................................15

     I.   Cross-Examination......................................17

     J.   Character Witnesses....................................18

     K.   902(11) Certifications.................................20

     L.   Defense Witnesses and Reciprocal Discovery.............20

     M.   Jury Nullification.....................................21

# TABLE OF AUTHORITIES

DESCRIPTION                                                                    PAGE

**FEDERAL CASES**

Anderson v. United States,
       417 U.S. 211 (1974).........................................14

Bourjaily v. United States,
       483 U.S. 171 (1987).........................................13

Michelson v. United States,
       335 U.S. 469 (1948).....................................18, 19

United States v. Anekwu,
       695 F.3d 967 (9th Cir. 2012)............................16, 20

United States v. Aramula-Ruiz,
       987 F.2d 599 (9th Cir. 1993)...............................21

United States v. Beckman,
       298 F.3d 788 (9th Cir. 2002)...............................12

United States v. Black,
       767 F.2d 1334 (9th Cir. 1985)...........................15, 18

United States v. Blackwood,
       878 F.2d 1200 (9th Cir. 1989)..............................15

United States v. Chu Kong Yin,
       925 F.2d 990 (9th Cir. 1991)...............................15

United States v. Gardner,
       611 F.2d 770 (9th Cir. 1980)...............................17

United States v. Hearst,
       563 F.2d 1331 (9th Cir. 1977)..............................18

United States v. Knigge,
       832 F.2d 1100 (9th Cir.  1987),
       amended, 846 F.2d 591 (9th Cir. 1988)...................13, 14

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

United States v. Leal,

    509 F.2d 122 (9th Cir. 1975).................................14

United States v. Lemire,

    720 F.2d 1327 (D.C. Cir. 1983)..............................17

United States v. Miranda-Uriarte,

    649 F.2d 1345 (9th Cir. 1981)...............................17

United States v. Pacheco-Lovio,

    463 F.2d 232 (9th Cir. 1972)................................14

United States v. Poschwatta,

    829 F.2d 1477 (9th Cir. 1987)...............................17

United States v. Powell,

    955 F.2d 1206 (9th Cir. 1992)...............................21

United States v. Ramirez-Jiminez,

    967 F.2d 1321 (9th Cir. 1992)...............................12

United States v. Rizk,

    660 F.3d 1125 (9th Cir. 2011)...............................16

United States v. Schmit,

    881 F.2d 608 (9th Cir. 1989)................................13

United States v. Schwayder,

    312 F.3d 1109 (9th Cir. 2002)...............................19

United States v. Serang,

    156 F.3d 910 (9th Cir. 1998)................................12

United States v. Shirley,

    884 F.2d 1130 (9th Cir. 1989)...............................17

United States v. Smith,

    893 F.2d 1573 (9th Cir. 1990)............................13, 14

iii

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                                    <u>PAGE</u>

<u>United States v. Soliman</u>,

    813 F.2d 277 (9th Cir. 1987)...................................12

<u>United States v. Thomas</u>,

    134 F.3d 975 (9th Cir. 1998)...................................19

<u>United States v. Vizcarra-Martinez</u>,

    66 F.3d 1006 (9th Cir. 1995)...................................12

<u>United States v. Williams</u>,

    989 F.2d 1061 (9th Cir. 1993)..................................12

<u>United States v. Yarborough</u>,

    852 F.2d 1522 (9th Cir. 1988)..................................13

<u>Zal v. Steppe</u>,

    968 F.2d 924 (9th Cir. 1992)...................................21

**FEDERAL STATUTES**

18 U.S.C. § 1341................................................... 7

**FEDERAL RULES**

Fed. R. Crim. P. 16............................................... 20

Fed. R. Crim. P. 26.2............................................. 20

Fed. R. Evid. 401................................................. 22

Fed. R. Evid. 403................................................. 22

Fed. R. Evid. 404(b).............................................. 11

Fed. R. Evid. 405(a).............................................. 19

Fed. R. Evid. 608(b).............................................. 18

Fed. R. Evid. 611(a).............................................. 16

Fed. R. Evid. 611(b).............................................. 17

Fed. R. Evid. 801(d)(2)(E)........................................ 13

Fed. R. Evid. 803(8).............................................. 15

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                          PAGE

Fed. R. Evid. 901(a)...............................................15

Fed. R. Evid. 902(4)...............................................15

Fed. R. Evid. 902(11)...........................................5, 20

Fed. R. Evid. 902(12)..............................................5

Fed. R. Evid. 1006.............................................6, 16

**OTHER**

Ninth Circuit Model Criminal Jury Instruction 8.121................7

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   CASE SCHEDULING MATTERS**

Jury trial is set for October 11, 2016, at 9:00 a.m.  The government estimates that its case-in-chief (including reasonable cross-examination) will take six to eight days.  Defendant David Gomez ("defendant") is proceeding to trial.  Trial by jury has not been waived.  Defendant is free from custody on bond.

**II.  TRIAL EVIDENCE**

**A.   Witnesses**

The government anticipates calling approximately 24 witnesses in its case-in-chief, as follows:

- **D.B.** and **J.C.**, during the relevant times employees of CIGNA, which served as the third-party administrator for health care benefits provided to members of the International Longshore & Warehouse Union ("ILWU") under the ILWU-Pacific Maritime Association Welfare Plan (the "ILWU-PMA Plan"), and **J.B.**, during relevant times an employee of the ILWU-PMA Plan BPO, are expected to testify regarding: the terms of, the copayment requirements of, and the continued retention of Coastwise Claims to process and pay health care benefit claims for the ILWU-PMA Plan; the procedures used by Coastwise Claims to process and pay health care benefit claims for the ILWU-PMA Plan; and the role played by CIGNA and then Zenith American as third-party administrators for the ILWU-PMA Plan.

- **R.C., Jr.**, during the relevant times the head of the Chiropractic Health Plan of California ("CHPC"), is expected to testify regarding the provision of chiropractic

services under the ILWU-PMA Plan, procedures and requirements put in place by CHPC to deter improper practices related to chiropractic services provided under the ILWU-PMA Plan, the CPT and ICD-9 Diagnosis codes used to bill for massage therapy and other chiropractic services, and the requirements for billing massage therapy and other chiropractic services as medically necessary.

- **R.M.**, who during the relevant times operated Chosen Business Solutions, is expected to testify regarding his meetings with Sergio Amador, defendant, and C.R. relating to the establishment and incorporation of Port Medical Associates, Inc., and a series of medical management companies, as well as the opening of a series of bank accounts for these companies.

- **Sergio Amador**, who has pled guilty and will be testifying pursuant to a plea agreement with the government, will testify regarding the fraud at Port Medical in which he, defendant, and others participated, including payments to ILWU members to encourage them to go to Port Medical, billing for non-medically necessary massages as medically necessary, billing for extra services not provided during patient visits, fabricating chart entries to submit bills for patient visits that never occurred, and the use of the medical management companies to distribute the proceeds from the fraud to himself, defendant, and others.

- Three former Port Medical office managers, **M.A.**, **P.F.** (formerly P.H., who will be testifying pursuant to a non-prosecution cooperation agreement with the government), and

2

**E.R.** (who is expected to testify pursuant to a court-order granting immunity), will describe their participation in, and the participation of Sergio Amador and defendant in, the fraud at Port Medical, including payments to patients and the fabrication of chart entries to support bills for patient visits that never occurred.

- Six former Port Medical employees, **E.C-R., J.M.C., T.L., N.L., Y.S.,** and **K.M.** (who is expected to testify pursuant to a grant of letter immunity from the United States Attorney's Office), are expected to testify regarding their observations of, and in certain instances participation in, fraudulent conduct at Port Medical, including payments to patients and the fabrication of chart entries to support bills for patient visits that never occurred.  To the extent these employees may have potential criminal liability, the United States Attorney's Office has advised them that it views them as witnesses and does not intend to pursue criminal charges.

- Seven ILWU-PMA Plan beneficiaries, **E.R.** (and her husband **R.V.**), **J.V., J.C., L.L.**, and **D.B.** (and his wife **D.B.**), will testify that they did not receive services for which Port Medical submitted bills and received payments.  Certain of these beneficiaries will testify that they received payments from Sergio Amador and/or defendant, either as team "sponsorships" provided with the understanding that they would themselves visit, and would encourage other team members to visit, Port Medical (R.V., J.C., and L.L.) or as payments disguised as team "sponsorships" or payments for

3

services that were in fact payments for permitting Port
Medical to bill for services purportedly provided to them
and their dependents (J.V.).  To the extent these
beneficiaries may have potential criminal liability, the
United States Attorney's Office has advised them that it
views them as witnesses and does not intend to pursue
criminal charges.

- **FBI Financial Analyst Robert Zalameda** is expected to
testify regarding his analysis of deposits into, checks
written on, and withdrawals from the bank accounts
maintained by Port Medical and related medical management
and other companies, including, in particular, cash
withdrawals by, and payments to, Sergio Amador and
defendant.

- **DOL-OIG Special Agent Marcus Valle** will testify regarding
the search of Port Medical's two clinics in August 2013,
and the seizure of certain items, including patient files
and computer records.  He also is expected to testify as a
summary witness with respect to records of Port Medical
claims submitted to and paid by the ILWU-PMA Plan.

The government reserves the right not to call certain of the
above witnesses, and/or to call additional witnesses, including in
particular additional Port Medical employees and additional ILWU-PMA
Plan beneficiaries, depending on the course of actual testimony at
trial.  In particular, if stipulations regarding the authenticity and
foundation for certain documents are not finalized, the government
will need to call several custodians of records.

4

**B.   Types of Evidence**

The government anticipates seeking to admit the following general types of evidence at trial, in addition to the witness testimony referenced above:

- Business Records:  CIGNA/Coastwise Claims documents and claims data, bank records, and other miscellaneous business records will be offered either pursuant to stipulation or as authenticated business records pursuant to Federal Rule of Evidence 902(11).  Based on a meet and confer with defendant's counsel, the government expects stipulations regarding these records.  If necessary, the government will call custodians of records from CIGNA and/or Zenith American, the ILWU-PMA Welfare Plan BPO, the Institute of Psycho-structural Balancing, and J.P. Morgan Chase Bank.

- Certified Public Records:  California Secretary of State records will be offered as self-authenticating public records pursuant to Federal Rule of Evidence 902(12).  Based on a meet and confer with defendant's counsel, the government expects stipulations regarding these records.

- Port Medical Clinic Records:  Numerous documents (including patient files, billing records, employment records, and other documents) that the government either seized during searches of the two Port Medical clinics or received pursuant to subpoenas issued to Port Medical, will be introduced.  Based on a meet and confer with defendant's counsel, the government expects stipulations regarding these records.  If necessary, the government will call two additional DOL-OIG Special Agents to authenticate documents

5

seized during the searches of the Port Medical clinics; two computer forensic examiners to authenticate records found on computers; and a former employee of Port Medical to authenticate the Port Medical patient files produced pursuant to subpoena.  Sergio Amador, M.A., P.F., and E.R. are also expected to identify certain of these records as documents maintained and used by Port Medical.

- <u>Summary Charts</u>:  Charts summarizing CIGNA/Coastwise Claims health care benefit claims data, patient files, bank records, records supporting the specific counts against defendant, and other miscellaneous records will be offered pursuant to Federal Rule of Evidence 1006.

- <u>Photographs</u>:  Photographs of the Port Medical clinics and of various Port Medical owners and employees, including defendant.

All of these documents have either been provided to, or made available for inspection by, defendant during the course of discovery in this case.  The government also will provide defendant with an electronic set of the exhibits it currently intends to use during its case in chief.  The government reserves the right not to offer any of these documents, and/or to offer additional documents, depending on the course of actual testimony at trial.

To date, the government has not received any reciprocal discovery, including any planned exhibits or witness statements from any witness defendant intends to call at trial.  The government has requested reciprocal discovery in all of its discovery production letters.

**III. MOTIONS <u>IN LIMINE</u>**

If stipulations regarding documents are not finalized, the government expects to file a Motion in Limine to Admit Business Records Pursuant to the Self-Authentication Provisions of Federal Rule of Evidence 902(11) ("MIL 1"). The government also expects to file a Motion in Limine to Admit Summary Charts Pursuant to Federal Rule of Evidence 1006 ("MIL 2").

**IV.  ELEMENTS OF THE CHARGED CRIME**

The indictment charges defendant with 20 counts of mail fraud, in violation of 18 U.S.C. § 1341, which has the following elements:

First, defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the statements made or facts omitted as part of the scheme were material, that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

Third, the defendant acted with the intent to defraud, that is the intent to deceive or cheat; and

Fourth, the defendant used, or caused to be used, the mails to carry out or attempt to carry out an essential part of the scheme.

*See* Ninth Circuit Model Criminal Jury Instruction No. 8.121.

///

///

1   **V.    STATEMENT OF FACTS**

2        The government intends to prove at trial the following facts,

3   among others:

4        Sergio Amador, defendant, and C.R. were all members of Local 13

5   of the ILWU.  The Pacific Maritime Association ("PMA") represented

6   the shipping companies that employ ILWU members at the docks along

7   the West Coast, including in the ports of Los Angeles and Long Beach.

8   As a result of labor negotiations, ILWU members and their dependents

9   received health care benefits under the ILWU-PMA Plan, which was

10  funded almost entirely by the PMA and its members (with minimal

11  contributions from ILWU members) and was considered a "Cadillac"

12  plan, that is, a plan that provided extraordinarily good benefits,

13  including, as relevant here, 100% coverage for chiropractic

14  treatments provided by in-network providers, with no co-pays or

15  deductibles required for ILWU members.  The ILWU-PMA Plan processed

16  and paid claims through the Coastwise Claims Office ("Coastwise"),

17  which used a paper processing system that resulted in claims being

18  submitted in hard copy via mail, with checks in payment of those

19  claims then mailed to providers.  Originally, Coastwise was run by

20  the ILWU-PMA Plan itself.  The Plan subsequently retained a third

21  party administrator (first Great Western, then CIGNA, then Zenith

22  American), but required that they continue to use the Coastwise

23  claims processing office.  During the period of the fraud alleged,

24  the third party administrator was CIGNA, which continued to use

25  Coastwise to process and pay claims using its paper processing

26  system.

27        In 2009, Amador, defendant, and C.R. used R.M. (who operated

28  Chosen Enterprises, an entity that assisted in setting up

corporations) to establish Port Medical, which offered chiropractic and other medical services through a clinic in Long Beach.  In mid-2010, Port Medical expanded to a second clinic in San Pedro.  Port Medical catered to, and recruited as patients, ILWU members and their dependents.  In particular, Amador, defendant, and other Port Medical employees acting at their direction, delivered payments to ILWU members to encourage them to come to Port Medical, bring their dependents to Port Medical, and encourage other ILWU members to come to Port Medical.  These payments were often made as "sponsorships" of basketball or softball teams, with the understanding that the ILWU member receiving the "sponsorship" would encourage other team members to go to Port Medical.  (This was the case with ILWU members J.C., L.L., and R.V., who will be witnesses at trial.)  In other instances, however, the payments were disguised as "sponsorships" or payments for services when in fact they were straight payments for coming to Port Medical on a specified payment per visit basis.  (This was the case with ILWU member J.V., who will be a witness at trial.)

When ILWU members did come to Port Medical, they were frequently asked to sign multiple sign-in stickers.  On repeated occasions, Port Medical staff (including M.A., P.F., E.R, and Y.S., who will be witnesses at trial), in some instances with Amador and/or defendant present, fabricated chart entries for ILWU members, affixing to those entries to make it look as if the ILWU member had received the services, the extra sign-in stickers, some of which were obtained from the ILWU members by defendant.  The fabricated charts were then submitted to Port Medical's billers, who prepared and submitted claims to the ILWU-PMA Plan based on the fabricated charts for services never rendered.  During the search of Port Medical, agents

recovered from a computer under the file name "PH" (the initials for P.F. under her maiden name), a list of patient names with corresponding numbers -- the patient names correspond with patients on whose charts P.F. is expected to testify she fabricated entries for services that were not provided.  ILWU members (E.R (and her husband R.V.), J.V., J.C., D.B. (and his wife, D.B.), and L.L.) are expected to corroborate the falsity of these entries by testifying that they and/or their dependents did not receive certain of the massages from P.F. and/or E.R. that were billed for by Port Medical.  These fabricated bills, and the resulting mailings of payment checks to Port Medical, support the charged counts of mail fraud.

In addition to fabricating charts to show that services were rendered when they were not, the evidence will show that the bulk of the massages billed for were not medically necessary.  ILWU members (E.R. and J.V. in particular) are expected to testify that, in many instances, particularly for their children, there were no medical issues that would justify the massages, and that they took their children to get massages simply because there was no cost to them and they enjoyed them.  Nevertheless, the chart entries purported to justify the massages as incidental and necessary to diagnoses of ailments made by Port Medical's chiropractor.  During the search of Port Medical, agents recovered a set of instructions for Port Medical staff preparing chart notations ("SOAP notes") that included the following: "Never write 'No complaints'.  We are giving medically necessary massages and the Insurance will not pay claims where the patient had no complaints"; "Do not copy/write SOAP note after SOAP note exactly the same each time, Change things up a little!!!"; and "After a couple treatments given document if there are signs of

1  improvement. We want to show the insurance company that our

2  treatments are actually benefitting the patient."

3      Port Medical billed using a standard claim form that was sent,

4  in hardcopy, via US mail, to Coastwise, which paid the claims by

5  sending checks to Port Medical via US mail.  The charged counts arise

6  from mailings of checks in payment for claims based on charts

7  fabricated by P.F. and/or E.R. for the following patients: E.R. and

8  her daughter C.R.; J.V. and his five children, H.V., D.V., F.V.,

9  L.V., and J.V.); J.C.; L.L.; and D.B., his wife, and their children.

10      Once payments were received at Port Medical, large numbers of

11  checks were written out of Port Medical to one of three medical

12  management companies that had been set up by Amador, defendant, and

13  C.R.: DCS Medical Management (DCS stood for David, C., and Sergio,

14  the first names of the three principals); Chosen Medical Management;

15  and Ramport Medical Management.  From these accounts, between 2010

16  and 2012 Amador, defendant, and C.R. took out approximately $357,000,

17  $284,000, and $168,000 respectively.  An additional approximately

18  $198,000 was taken out by A.A., Sergio Amador's brother and a former

19  seminary student, who was acting at S.A.'s instructions.  An

20  additional approximately $229,000 went to K.M., a licensed

21  chiropractor who worked at Port Medical and is expected to testify

22  that, with the knowledge and encouragement of defendant, he

23  participated in fabricating certain patient charts.

24 **VI.  EVIDENTIARY ISSUES**

25      **A.   Stipulations**

26      The government has proposed to defendant stipulations to the

27  authentication and admissibility (subject to objections for

28  relevance) of the business and certified public records, the records

seized during the search of the Port Medical clinics, and the records produced by Port Medical pursuant to subpoena.  Based on a meet and confer with defendant's counsel, the government expects these stipulations, which would render MIL 1 moot.

## B.   Proof of the Charged Scheme

Defendant may attempt to argue that parts of the charged scheme to defraud are somehow other acts evidence subject to the limitations of Federal Rule of Evidence 404(b).  This is not the case.  Evidence is "'direct evidence,' when it is used to flesh out the circumstances surrounding the crime with which [defendant is] charged, thereby allowing the jury to make sense of the testimony in its proper context."  United States v. Ramirez-Jiminez, 967 F.2d 1321, 1327 (9th Cir. 1992) (evidence of defendant's false statements to agents "came in the course of the conduct with which he was charged, and [was] probative of his consciousness that his conduct was illegal"); United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987) (evidence linking the defendant to the fraud committed by his supervisee was direct proof);  see United States v. Serang, 156 F.3d 910, 915 (9th Cir. 1998) (evidence admissible if "necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." (quoting United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012-13 (9th Cir. 1995)); United States v. Beckman, 298 F.3d 788, 794 (9th Cir. 2002) (same). A jury "cannot be expected to make its decision in a void -- without knowledge of the time, place, and circumstances of the acts which form the basis of the charge."  Vizcarra-Martinez, 66 F.3d at 1013.  "The policies underlying rule 404(b) [requiring 403 balancing] are inapplicable when offenses committed as part of a 'single criminal episode' become

12

1  other acts simply because the defendant 'is indicted for less than

2  all of his actions.'" United States v. Williams, 989 F.2d 1061, 1070

3  (9th Cir. 1993), quoting Soliman, 813 F.2d at 279.

4     **C.   Co-Schemer Statements**

5     The government intends to admit statements made by defendant,

6  Sergio Amador, and other co-schemers in furtherance of the scheme to

7  defraud.  These statements will pertain to and help explain how the

8  scheme to defraud operated.

9     A statement made by one co-conspirator or co-schemer during the

10 course and in furtherance of the conspiracy or scheme may be used

11 against another conspirator or co-schemer because such statements are

12 not hearsay.  Fed. R. Evid. 801(d)(2)(E); Bourjaily v. United States,

13 483 U.S. 171, 183 (1987).  A statement admitted under Rule

14 801(d)(2)(E) does not violate the Confrontation Clause, and no

15 independent inquiry into reliability is needed.  Bourjaily, 483 U.S.

16 at 183-84; United States v. Knigge, 832 F.2d 1100, 1107 (9th Cir.

17 1987), amended, 846 F.2d 591 (9th Cir. 1988).  Rule 801(d)(2)(E)

18 requires a foundation that: (1) the statement was made during the

19 life of the conspiracy or scheme; (2) the statement was made in

20 furtherance of the conspiracy or scheme; and (3) there is, including

21 the co-schemer's declaration itself, sufficient proof of the

22 existence of the conspiracy/scheme and defendant's connection to it.

23 Bourjaily, 483 U.S. at 173, 181; United States v. Smith, 893 F.2d

24 1573, 1578 (9th Cir. 1990).  These foundational requirements must be

25 established by a preponderance of the evidence.  Bourjaily, 483 U.S.

26 at 175; United States v. Schmit, 881 F.2d 608, 610 (9th Cir. 1989).

27 To be admissible under Rule 801(d)(2)(E), the statement must "further

28 the common objectives of the conspiracy," or "set in motion

13

transactions that [are] an integral part of the [conspiracy]." United States v. Aramula-Ruiz, 987 F.2d 599, 607-08 (9th Cir. 1993); United States v. Yarborough, 852 F.2d 1522, 1535 (9th Cir. 1988).

### D.   Patient Files

The government intends to introduce into evidence patient files seized during searches of the Port Medical clinics and produced by Port Medical in response to subpoena.  The patient files contain fraudulent medical records.  None of the documents in the patient files contain hearsay statements because they are statements of medical diagnosis or treatment and describe medical histories.  See Fed. R. Evid. 803(4) (statements for medical diagnosis or treatment not hearsay).  Moreover, the government is offering certain of the statements in the patient files not for their truth but to show that certain documents contained within the files are fraudulent.  See Anderson v. United States, 417 U.S. 211, 219-20 (1974) ("The election contest testimony of Tomblin and Browning, however, was not admitted into evidence in the [§] 241 trial to prove the truth of anything asserted therein.  Quite the contrary, the point of the prosecutor's introducing those statements was simply to prove that the statements were made so as to establish a foundation for later showing, through other admissible evidence, that they were false."); United States v. Knigge, 832 F.2d 1100, 1108 (9th Cir. 1987).

### E.   Duplicates

The government intends to offer copies of many records rather than the originals.  A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original, or (2) under the circumstances, it would be unfair to admit the duplicate instead of the original.  Fed.

14

R. Evid. 1003; <u>United States v. Smith</u>, 893 F.2d 1573, 1579 (9th Cir. 1990); <u>United States v. Leal</u>, 509 F.2d 122, 125-26 (9th Cir. 1975); <u>United States v. Pacheco-Lovio</u>, 463 F.2d 232, 233-34 (9th Cir. 1972).

### F.   Authentication and Identification

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

Rule 901(a) only requires the government to make a prima facie showing of authenticity or identification "so that a reasonable juror could find in favor of authenticity or identification." <u>United States v. Chu Kong Yin</u>, 935 F.2d 990, 996 (9th Cir. 1991), cert. denied, 511 U.S. 1035 (1994); <u>see also</u> <u>United States v. Blackwood</u>, 878 F.2d 1200, 1202 (9th Cir. 1989); <u>United States v. Black</u>, 767 F.2d 1334, 1342 (9th Cir.), cert. denied, 474 U.S. 1022 (1985).  Once the government meets this burden, "[t]he credibility or probative force of the evidence offered is, ultimately, an issue for the jury." <u>Black</u>, 767 F.2d at 1342.

### G.   Certified Public Records

At trial, the government intends to offer into evidence certified public records, primarily California Secretary of State records regarding the incorporation of certain entities used in the fraud scheme.  These records are self-authenticating.  Fed. R. Evid. 902(4).  Moreover, such public records are not hearsay.  Fed. R. Evid. 803(8).

### H.   Summary Charts

The government intends to introduce into evidence several charts summarizing the voluminous bank and business records in this case.

15

There are summary charts analyzing the day to day transactions in the bank accounts maintained by the corporate entities that received, transferred among themselves, and made payments derived from the proceeds of payments from the ILWU-PMA Plan based on fraudulent bills submitted by Port Medical.  In addition, there will be summary charts analyzing claims submitted by Port Medical to the ILWU-PMA Plan.

Fed. R. Evid. 1006 provides:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying or both, by other parties at a reasonable time and place.  And the court may order the proponent to produce them in court.

The Advisory Committee Notes to Rule 1006 add that:

> "The admission of summaries of voluminous books, records, or documents offers the only practicable means of making their contents available to judge and jury.  The rule recognized this practice, with appropriate safeguards."

A chart or summary may be admitted as evidence where the proponent establishes that the underlying documents are voluminous, admissible and available for inspection.  United States v. Rizk, 660 F.3d 1125, 1130 (9th Cir. 2011).  "The purpose of the rule is to allow the use of summaries when the documents are unmanageable or when the summaries would be useful to the judge and jury."  Id. (quoting Davis & Cox v. Summa Corp., 751 F.2d 1507, 1516 (9th Cir. 1985)).

In addition, summary charts are admissible under Fed. R. Evid. 611(a), which permits a court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for

ascertainment of the truth; (2) avoid needless consumption of time; and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a); United States v. Anekwu, 695 F.3d 967, 982 (9th Cir. 2012); United States v. Poschwatta, 829 F.2d 1477, 1481 (9th Cir. 1987); United States v. Gardner, 611 F.2d 770, 776 (9th Cir. 1980), cert. denied, 484 U.S. 64 (1988).

A summary witness may properly testify about, and use a chart to summarize, evidence that has already been admitted.  The court and jury are entitled to have a witness "organize and evaluate evidence which is factually complex and fragmentally revealed."  United States v. Shirley, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (agent's testimony regarding her review of various telephone records, rental receipts, and other previously offered testimony held to be proper summary evidence, as it helped jury organize and evaluate evidence; summary charts properly admitted); United States v. Lemire, 720 F.2d 1327, 1348 (D.C. Cir. 1983), cert. denied, 467 U.S. 1226 (1984).

## I.   Cross-Examination

The scope of a cross-examination is within the discretion of the trial court.  Fed. R. Evid. 611(b).

Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.  The court may, in the exercise of its discretion, permit inquiry into additional matters as if on direct examination.  Fed. R. Evid. 611(b).

A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues he puts in dispute during cross-examination.  A defendant has no right to avoid cross-examination on matters which call into question his claim of

1    innocence.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54

2    (9th Cir. 1981).

3         A defendant who testifies at trial waives his Fifth Amendment

4    privilege and may be cross-examined on matters made relevant by his

5    direct testimony.  United States v. Black, 767 at 1341.

6         The scope of the defendant's waiver is co-extensive with the

7    scope of relevant cross-examination.  The extent of the waiver is

8    determined by whether the question reasonably relates to subjects

9    covered by defendant's direct testimony.  United States v. Hearst,

10   563 F.2d 1331, 1340 (9th Cir. 1977), cert. denied, 435 U.S. 1000

11   (1978).  The government is not required to provide notice of matters

12   about which it may seek to cross-examine defense witnesses, including

13   defendants, should they testify.

14        Federal Rule of Evidence 608(b) provides that specific instances

15   of the conduct of a witness, for the purpose of attacking or

16   supporting the witness' credibility may not be proved by extrinsic

17   evidence but that they may, in the discretion of the court, if

18   probative or truthfulness or untruthfulness, be inquired into on

19   cross-examination of a witness (1) concerning the witness' character

20   for truthfulness or untruthfulness, or (2) concerning the character

21   for truthfulness or untruthfulness of another witness as to which

22   character the witness being cross-examined has testified.

23   **J.   Character Witnesses**

24        The Supreme Court has recognized that character evidence –

25   particularly cumulative character evidence – has weak probative value

26   and great potential to confuse the issues and prejudice the jury.

27   See Michelson v. United States, 335 U.S. 469, 480, 486 (1948).  The

28

1  Court has thus given trial courts wide discretion to limit the

2  presentation of character evidence.  Id.

3      In addition, the form of the proffered evidence must be proper.

4  Federal Rule of Evidence 405(a) sets forth the sole methods for which

5  character evidence may be introduced.  It specifically states that,

6  where evidence of a character trait is admissible, proof may be made

7  in two ways: (1) by testimony as to reputation and (2) by testimony

8  as to opinion.  Thus, character witnesses called by a defendant may

9  not testify about specific acts demonstrating a particular trait,

10  unless a person's character or character trait is an essential

11  element of a charge, claim, or defense.  Fed. R. Evid. 405; see also

12  United States v. Thomas, 134 F.3d 975, 980 (9th Cir. 1998)

13  (recognizing that specific acts are admissible under Rule 405 in

14  connection with an entrapment defense).  Rather, evidence of a

15  defendant's character may be proved only by testimony about the

16  person's reputation or by testimony in the form of an opinion.  Fed.

17  R. Evid. 405(a).

18      On cross-examination of a defendant's character witness, the

19  government may inquire into specific instances of defendant's past

20  conduct relevant to the character trait at issue.  See Fed. R. Evid.

21  405(a).  In particular, a defendant's character witnesses may be

22  cross-examined about their knowledge of the defendant's past crimes,

23  wrongful acts, and arrests.  See Michelson, 335 U.S. at 477-79.  The

24  government may also call contradictory witnesses to testify as to

25  defendant's negative reputation in the community.  Id. at 479.

26  However, the government may not cross-examine character witnesses by

27  asking whether their opinion would change if defendant had, in fact,

28

committed certain acts alleged in the indictment.  <u>United States v.</u>
<u>Shwayder</u>, 312 F.3d 1109, 1120-21 (9th Cir. 2002).

### K.  902(11) Certifications

Absent stipulations (which it expects based on its meet and confer with defendant's counsel), the government will seek to admit certain business records at trial through Federal Rule of Evidence 902(11) certifications, instead of through custodial witnesses.  Rule 902(11) provides for the admission of business records into evidence through such certifications, as long as the opposing party has had notice.  Fed. R. Evid. 902(11).  Here, the defense has had notice of all such records and certifications.  This procedure does not violate the Confrontation Clause.  <u>See</u> <u>Anekwu</u>, 695 F.3d at 976-977.

### L.  Defense Witnesses and Reciprocal Discovery

Defendants have neither provided a witness list to the government nor identified any witnesses they intend to call.  To the extent defendants elect to call witnesses at trial, the government requests that the Court order defendants to provide an offer of proof with respect to the anticipated testimony of those witnesses so that the government may assess whether their testimony would be relevant and otherwise admissible.

The government has requested reciprocal discovery, including Jencks material, from defendant.  Defendants have not produced any reciprocal discovery to which the United States is entitled under Rules 16 and 26.2 of the Federal Rules of Criminal Procedure or the Jencks Act.  Thus, to the extent defendants may attempt to introduce or use any documents at trial that they have not previously produced, the United States reserves the right to object and to seek to have such documents precluded.

## M.   Jury Nullification

The Court should exclude any evidence and/or argument relating to or concerning any possible jury nullification defense.  This includes any evidence and/or argument meant to play on the jury's sympathy for defendants, particularly pertaining to their role as parents to young children.

It is well-established that a defendant does not have a right to a jury nullification instruction.  <u>United States v. Powell</u>, 955 F.2d 1206, 1213 (9th Cir. 1992).  Having no right to seek jury nullification, defendant has no right to present evidence relevant only to such a defense.  <u>Zal v. Steppe</u>, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring)("[N]either a defendant nor his attorney has a right to present to a jury evidence that is <u>irrelevant</u> to a <u>legal</u> defense to, or an element of, the crime charged.  Verdicts must be based on the law and the evidence, <u>not</u> on jury nullification as urged by either litigant.").

///

///

1    Since they do not make any fact in issue more or less probable,

2 evidence and arguments meant to play on the jury's sympathy are not

3 relevant under Federal Rule of Evidence 401 and must be excluded on

4 that basis.   In addition, appeals to sympathy are unduly prejudicial

5 and confusing to the jury and misleading under Rule 403 and,

6 therefore, properly excluded on that basis even if they had some

7 arguable relevance.

8

9 Dated: September 8, 2016        Respectfully submitted,

10                                EILEEN M. DECKER
                                  United States Attorney
11

12                                LAWRENCE S. MIDDLETON
                                  Assistant United States Attorney
13                                Chief, Criminal Division

14
                                  _____/s/_____
15                                GEORGE S. CARDONA
                                  Assistant United States Attorney
16

17                                Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

18

19

20

21

22

23

24

25

26

27

28