```
 1                 UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3         HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

 4                           - - - -

 5


 6
     UNITED STATES OF AMERICA,    )
 7                                )
                   PLAINTIFF,     )
 8                                )
         vs.                      )    No. CR 15-629-RGK-2
 9                                )
     DAVID GOMEZ,                 )
10                                )
                   DEFENDANT.     )
11   _____)

12


13


14         REPORTER'S PARTIAL TRANSCRIPT OF JURY TRIAL

15            (TESTIMONY OF WITNESS SERGIO AMADOR)

16                 (VOLUME 1, PAGES 1 - 16)

17               THURSDAY, OCTOBER 13, 2016

18                        3:47 P.M.

19                 LOS ANGELES, CALIFORNIA

20


21


22   _____

23          SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR
            Official Reporter, U.S. District Court
24                  255 East Temple Street
                    Los Angeles, CA  90012
25                     213.894.5949
```

**APPEARANCES OF COUNSEL:**

**FOR PLAINTIFF, UNITED STATES OF AMERICA:**

    OFFICE OF THE UNITED STATES ATTORNEY
    BY:  GEORGE S. CARDONA
        ASSISTANT UNITED STATES ATTORNEY
    312 NORTH SPRING STREET, SUITE 1100
    LOS ANGELES, CALIFORNIA  90012
    213.894.2434

**FOR DEFENDANT, DAVID GOMEZ:**

    ULTIMO LAW FIRM, PC
    BY:  PAUL J. ULTIMO
        ATTORNEY AT LAW
    7700 IRVINE CENTER DRIVE, SUITE 800
    IRVINE, CALIFORNIA  92618-3047
    949.851.0300

**ALSO PRESENT:**

    SPECIAL AGENT MARCUS VALLE, DEPARTMENT OF LABOR,
    OFFICE OF THE INSPECTOR GENERAL

    JEANNIE HENSCHEL

**I N D E X**

| GOVERNMENT'S WITNESS: | PAGE |
|---|---|
| **SERGIO AMADOR** DIRECT EXAMINATION BY MR. CARDONA | 5 |

**T R I A L   E X H I B I T S**

| EXHIBIT NUMBER | RECEIVED IN EVIDENCE | STRICKEN |
|---|---|---|
| 1 | 13 | -- |

```
 1            LOS ANGELES, CALIFORNIA; THURSDAY, OCTOBER 13, 2016
 2                              3:47 P.M.
 3                              - - - -
 4            (Prior proceedings were held, reported;
 5             not transcribed herein.)
 6            (In the presence of the jury:)
 7
 8           THE COURT:  Next witness.
 9           MR. CARDONA:  Your Honor, the government calls Sergio
10    Amador.
11           THE COURT:  Okay.
12           THE CLERK:  Good afternoon.  Right here to be sworn.
13    Can you please raise your right hand.
14       Do you solemnly swear the testimony that you are about to
15    give in the matter now before the Court shall be the truth, the
16    whole truth, and nothing but the truth, so help you God?
17           THE WITNESS:  Yes.
18           THE CLERK:  You may be seated.
19       May I please ask that you state your full name for the
20    record and spell your last name.
21           THE WITNESS:  Sergio Amador, A-m-a-d-o-r.
22           THE CLERK:  Thank you.
23           THE COURT:  Thank you.
24       Counsel, you may inquire.
25           MR. CARDONA:  Thank you, Your Honor.
```

| | |
|---|---|
| 1 | **SERGIO AMADOR, GOVERNMENT'S WITNESS,** |
| 2 | **DIRECT EXAMINATION** |
| 3 | BY MR. CARDONA: |
| 4 | Q.  Mr. Amador, are you testifying here pursuant to a plea |
| 5 | agreement with the government? |
| 6 | A.  Yes. |
| 7 | Q.  Did you plead guilty to one count of mail fraud? |
| 8 | A.  Yes, I did. |
| 9 | Q.  Did the government agree to dismiss the rest of the |
| 10 | charges in the indictment against you? |
| 11 | A.  No. |
| 12 | Q.  Are you sure about that?  Is there an agreement that at |
| 13 | sentencing the government will dismiss the remainder of the |
| 14 | counts in the indictment? |
| 15 | A.  The remainder, yes. |
| 16 | Q.  So am I correct that you only pled guilty to one count? |
| 17 | A.  To one count, yes. |
| 18 | Q.  And the government has agreed to dismiss the other 19 |
| 19 | counts against you? |
| 20 | A.  Yes. |
| 21 | Q.  Now, did the government agree to recommend a reduction on |
| 22 | your sentence based on early acceptance of responsibility from |
| 23 | your own conduct? |
| 24 | A.  Yes. |
| 25 | Q.  Did you agree to cooperate with the government? |

```
 1  A.    Yes, I did.
 2  Q.    Does that cooperation include your testimony here at
 3  trial?
 4  A.    Yes, it does.
 5  Q.    Are you hoping that, as a result of your cooperation, both
 6  here and elsewhere, that the government would move to reduce
 7  your sentence further?
 8  A.    Yes.
 9  Q.    How are you employed?
10  A.    I'm a longshoreman.  I work at the docks, L.A. and Long
11  Beach Harbor.
12  Q.    How long have you been a longshoreman?
13  A.    Since 1997.
14  Q.    Are you a member of the ILWU?
15  A.    Yes, I am.
16  Q.    Which local?
17  A.    Local 13.
18        THE COURT:  Could you bring yourself up -- yeah.
19        THE WITNESS:  Local 13.
20        THE COURT:  Thank you.
21  BY MR. CARDONA:
22  Q.    Do you know the defendant, David Gomez?
23  A.    Yes, I do.
24  Q.    Is he also a longshoreman?
25  A.    Yes, he is.
```

1    Q.    He also a member of Local 13?
2    A.    Yes, he is.
3    Q.    Do you know Chris Rice?
4    A.    Yes, I do.
5    Q.    How do you know Chris Rice?
6    A.    Working at the docks.  He's a foreman.
7    Q.    Is he a member of Local 94, the foreman's local?
8    A.    The foreman's local, yes.
9    Q.    Have you worked with David Gomez at the docks?
10   A.    Yes.
11   Q.    Have you worked with Chris Rice at the docks?
12   A.    Yes.
13   Q.    Now, at some point in late 2008 or early 2009, were you
14   involved in opening a clinic called Port Medical in Long Beach?
15   A.    Yes.
16   Q.    How did that come about?
17   A.    It was my idea, and from there I invited Mr. Gomez, David
18   Gomez, to -- if he wanted to partner up and open the clinic up.
19   Q.    Why did you invite David Gomez?
20   A.    At the time he owned a restaurant in San Pedro and he had
21   a business on his own, so I -- I thought it would be a good --
22   good partner.
23   Q.    What was the name of that restaurant?
24   A.    Sixth Street Bistro.
25   Q.    And what was the other business he had?

1  A.  He was involved in some gold exchange, I believe.
2  Q.  You know where that was?
3  A.  In L.A. somewhere.
4  Q.  Did you reach an agreement with Mr. Gomez as to how you
5  would found the business, who would put up what?
6  A.  It was vague at the time.  We just -- we were planning on
7  pretty much going 50/50 until we found a partner to put more
8  money up.
9  Q.  Did you find that partner?
10 A.  Yes.
11 Q.  Who was it?
12 A.  Mr. Rice.  Chris Rice.
13 Q.  So at first when you were having these discussions, what
14 were the first steps you took in setting up Port Medical?
15 A.  The first step was to find a location.  I found the
16 location in Long Beach.  And then from there, we -- we leased
17 it, David Gomez and I.
18 Q.  At that point had Chris Rice come in?
19 A.  I believe he was mentioned, but at that time his credit
20 wasn't -- wasn't good enough to go on the -- on the lease, but
21 yes.
22 Q.  Now, ultimately, did you invest some money?
23 A.  Yes, we did.
24 Q.  How much did you invest?
25 A.  I believe at that time was probably 40,000, somewhere

1  around there.
2  Q.   Did David Gomez put up money?
3  A.   Yes.  We all did.
4  Q.   How much did David Gomez put up?
5  A.   Probably around the same.
6  Q.   How about Chris Rice?
7  A.   Yes.
8  Q.   How much did he put up?
9  A.   I believe around 60- at that time.
10 Q.   What was the next step that was taken in opening up Port
11 Medical?
12 A.   We wanted to find, I guess a doctor, to -- to be the
13 coordinator of the clinic, or the owner of the clinic, and then
14 from there we needed a manager to run the facility.
15 Q.   Did you find a doctor?
16 A.   Not really.  We had one, probably was with us for about
17 a -- two weeks, three weeks.  It didn't work out.  So we knew
18 we needed a manager.
19 Q.   Did you find a manager?
20 A.   Yes.
21 Q.   Who was the manager you found?
22 A.   Michelle Aragon.
23 Q.   How did you find her?
24 A.   I think she was recommended by -- by someone at the port.
25 I don't even remember the -- the young lady's name.  Everyone

1    knew -- not everyone, but we were asking if they knew -- we
2    were asking people at the docks if they knew someone that could
3    run a clinic.
4    Q.   Did you get in touch with Michelle Aragon?
5    A.   Yes.  I believe she got in touch with us, and that's
6    how --
7    Q.   What was she doing at the time?
8    A.   She was working for her cousin as a manager at a
9    chiropractor office.
10   Q.   Do you know the name of that cousin?
11   A.   Yes.  I just went blank.  It'll come back to me, but yes,
12   I do.  I know him.
13   Q.   Does the name David Rivera sound --
14   A.   Rivera, yeah.
15   Q.   Was that who she was working for?
16   A.   I knew him as Mr. Rivera.  I don't know -- I don't recall
17   his first name.
18   Q.   So when Michelle Aragon reached out to you, did you meet
19   with her?
20   A.   Yes.
21   Q.   Was Mr. Gomez there?
22   A.   Yes.
23   Q.   Do you recall where that meeting was?
24   A.   At the restaurant, yes.
25   Q.   At which restaurant?

```
 1   A.    Sixth Street Bistro.
 2   Q.    And what did you and Mr. Gomez discuss with Michelle
 3   Aragon?
 4   A.    That we had an idea of opening up a clinic, we had a
 5   location, and we needed help.
 6   Q.    Did she agree to help you?
 7   A.    On the first initial visit, no.
 8   Q.    Did you have a subsequent visit?
 9   A.    Yes.  She -- she, from there, went ahead and called us
10   back and said she would take the job.
11   Q.    What was the next step in setting up Port Medical?
12   A.    She -- from there, she pretty much took the rein of
13   finding the chiropractor and the massage therapist and our
14   front office, so -- and acupuncture.
15   Q.    Did she find a chiropractor for you?
16   A.    Yes.
17   Q.    Who was that?
18   A.    Mr. Malone.
19   Q.    Is that Kevin Malone?
20   A.    Kevin Malone.
21   Q.    Did she also find massage therapists for you?
22   A.    Yes.
23   Q.    Do you remember any of the names of any of those massage
24   therapists?
25   A.    No, not at this -- no.
```

```
 1   Q.   Was there also office staff that she found?
 2   A.   Yes.
 3   Q.   You remember the names of any of the office staff?
 4   A.   At the time, no.  It was -- it was so --
 5   Q.   So once you had all that in place, you had a location, a
 6   manager, a chiropractor, some massage therapists, did she also
 7   find you an acupuncturist?
 8   A.   The acupuncturist she found was only with us for probably
 9   three months, and then from there we -- we hired someone else.
10   Q.   When you say "we," was that you and Mr. Gomez?
11   A.   Yeah.  We put, I believe, an ad in the paper, right,
12   something like that.
13   Q.   Do you recall when it was that Port Medical started
14   operating?
15   A.   No.  Not exact date, no.
16   Q.   Was it in 2008, 2009?
17   A.   Somewhere around there.
18   Q.   Was there a company that you and Mr. Gomez set up called
19   DCS Medical Management?
20   A.   Yes.
21   Q.   What was that company for?
22   A.   That was going to be the -- the managing company,
23   meaning -- we were advised by Michelle at that time, that she
24   spoke to an attorney, and we would have a management company to
25   disburse the funds, to pay payroll, the rent, and so forth.
```

```
 1            MR. CARDONA:  Your Honor, I'd like to offer Exhibit 1
 2   at this time.
 3            THE COURT:  Okay.  I thought it's already been
 4   introduced.
 5            MR. CARDONA:  It was introduced by mistake.
 6            THE COURT:  Oh, that's right.  It was 2 rather than 1.
 7   My mistake.
 8            MR. ULTIMO:  No objection, Your Honor.
 9            MR. CARDONA:  My mistake, actually, but --
10            THE COURT:  It will be received.
11         (Received in evidence, Trial Exhibit 1.)
12   BY MR. CARDONA:
13   Q.   So I've put up on the screen what is marked as Exhibit 1.
14   I'll try and blow some things up so they're easier to see, but
15   you see that this is a form for DCS Medical Management, LLC?
16   A.   Yes.
17   Q.   And according to this, it was filed December 29th, 2008.
18   Was that around the time period that you and Mr. Gomez were in
19   the process of getting Port Medical up and running?
20   A.   Yes.  I believe it was -- yes.  It was probably running,
21   and then we opened up that management company.
22   Q.   Then down below here, do you see, "Name of initial agent
23   for service of process, David Gomez"?  Was he put in that
24   position?
25   A.   At the time we didn't really discuss anything, so I'm
```

1  assuming he -- he went ahead and went on there.  I -- I --
2  Q.   What do you mean you didn't discuss anything?
3  A.   We didn't discuss who -- who was going to go on the
4  paperwork or anything.  It was just, whatever needed to be done
5  at that time, we were -- either he would do it or I would do
6  it.
7  Q.   Down at the bottom it's signed David Gomez; is that right?
8  A.   Yes, it looks like his signature.
9  Q.   Now, did you --
10      THE COURT:  Counsel, let me interrupt you at this
11 time, because it is 4:00 o'clock.
12      Ladies and gentlemen, I'm going to be excusing you at this
13 time for the evening.
14      Remember the admonishment not to discuss the case among
15 yourselves or with anybody else or form or express any opinions
16 about the matter until it's submitted to you and you retire
17 into the jury room.  Same admonition:  Find something
18 interesting to watch on TV, but don't think about the case.
19      We'll see you back in tomorrow morning.  I don't know, you
20 got a perfect record going so far, so let's see if we can keep
21 it up.  Tomorrow morning at 8 --
22      MULTIPLE JURORS:  -- 15.
23      THE COURT:  Okay.  Great.  You're going to be excused
24 at this time, and if you'd leave quietly, because the Court
25 will still be in session.

```
1            THE CLERK:  All rise.
2            THE COURT:  You may step down, also.  You're ordered
3  to be back here tomorrow morning at 8:30.
4            THE WITNESS:  8:30?
5            THE COURT:  Yeah.
6
7            (Further proceedings were held, reported,
8            not transcribed herein.)
9
10                           --o0o--
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

*CERTIFICATE*

*I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct partial transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.*

*Date: NOVEMBER 23, 2016*

*/S/ SANDRA MACNEIL*

*Sandra MacNeil, CSR No. 9013*